**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

**RANDYL PARKER,**

    **Plaintiff,**

**v.**                                                                                     Case No: 5:13-CV-238-Oc-18PRL

**COMMISSIONER OF SOCIAL**
**SECURITY**

    **Defendant.**

_____

**REPORT AND RECOMMENDATION[1]**

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for disability insurance benefits ("DIB"). The Court has reviewed the record, the memoranda (Docs. 23 & 26), and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED** under sentence four of 42 U.S.C. §405(g).

**I. Procedural History and Summary of the ALJ's Decision**

On October 29, 2009, Plaintiff filed an application for DIB, alleging a disability onset date of March 1, 2009. (Tr. 177-83). The Social Security Administration ("SSA") denied his application initially and upon reconsideration. (Tr. 73-75, 82-83). Plaintiff requested a hearing before an Administrative Law Judge (Tr. 84) and on October 18, 2011, ALJ Pamela Houston held a hearing. (Tr. 40-70). On December 6, 2011, ALJ Houston issued an unfavorable decision. (Tr. 18-33).

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2009, the alleged onset date. (Tr. 20). At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar spine disorder, diabetes mellitus resulting in partial amputation of the left foot and recurrent ulcerations, and obesity. (Tr. 20).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> perform work as defined in 20 CFR 404.1567 except the claimant can occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, sit for 8 hours in an 8-hour day, and stand or walk for 2 hours in an 8-hour day, but not all at one time. He can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but never climb ropes, ladders, or scaffolds. He can frequently reach overhead and frequently handle with his non-dominant hand. He should have no concentrated exposure to temperature extremes or vibrations and is unable to work with dangerous moving machinery, at heights, or in a work place where there is more than moderate noise (as defined in the *Dictionary of Occupational Titles*). Additionally, in order to address the claimant's complaints of concentration difficulties due to pain, he should have no more than occasional interaction with co-workers, supervisors or the general public to minimize distractions while performing at work, and should generally work within his own area to minimize the frequency and duration of ambulation. Further, the tasks he is performing should be both simple (which are defined as those that can be learned with a simple on the job demonstration or within 30 days) and routine (which are defined as those that are performed the same wary or in a similar manner each time).

(Tr. 22).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 31). However, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 31). Thus, the ALJ found that Plaintiff was not disabled from March 1, 2009, through the date of the decision. (Tr. 32). The Appeals Council denied Plaintiff's

Request for Review. (Tr. 1-5). After exhausting his administrative remedies, Plaintiff timely filed the instant appeal. (Doc. 1).

## II. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356,

1358 (11th Cir. 1991)(per curiam). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560, *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### III. Analysis

On appeal, Plaintiff's sole argument is that the ALJ failed to properly consider Plaintiff's credibility. Plaintiff simply argues that "[n]one of Plaintiff Parker's treating physicians doubts that he suffers from degenerative disk disease or that he experiences chronic pain as a result of the interplay between his size and his degenerating back. Thus the ALJ should have accepted Plaintiff Parker's pain testimony as credible and found him disabled." (Doc. 23 at 13).[2]  Plaintiff further claims that "it is innately credible that a person as large as the Plaintiff with his history of degenerative disk disease, would have significant back pain" and that the ALJ should have taken into account the chronicity of Plaintiff's pain. (Doc. 23 at 12). However, the question is not whether Plaintiff had chronic back pain; but rather, whether his back pain caused disabling limitations.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements "concerning the intensity, persistence and limiting effects" of these symptoms were not fully credible. (Tr. 24, 29-31.) When as here, an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Jones v. Department*

---

[2] In his memorandum, Plaintiff states that he is somewhere between 6 feet 10 inches and 7 feet tall, weighing approximately 350 pounds. (Doc. 23 at 10).

*of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence). The undersigned has no difficulty concluding in this case that the ALJ met her burden.

The ALJ clearly applied the Eleventh Circuit's pain standard "threshold" assessment to Plaintiff's subjective complaints. *See Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The ALJ stated that she considered Plaintiff's subjective complaints in light of 20 C.F.R. §404.1529 and §416.929. (R. 29). In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's subjective complaints were not fully credible based on *inter alia*: (1) Plaintiff's treatment records from Ocala Family Physicians, Heart of Florida Health Clinic, and Foot and Ankle Center of Ocala; (2) Plaintiff's failure to follow up on recommendations made by treating doctors; (3) the lack of any restrictions placed on Plaintiff by a treating doctor; and (4) the lack of significant findings by the consultative examiners. (Tr. 24-31). In his memorandum, Plaintiff does not specifically challenge any reason articulated by the ALJ for discrediting Plaintiff's subjective complaints, nor does he challenge the ALJ's consideration of any evidence.[3]

The ALJ correctly noted that the medical evidence does not support disabling limitations related to his back since the alleged onset date of March 1, 2009.[4] The ALJ discussed the medical

---

[3] By not raising any such arguments in his memorandum, the undersigned finds that Plaintiff has abandoned them. *See e.g., Sanchez v. Comm'r of Soc. Sec.*, 507 Fed. App'x 855, 856 n.1 (11th Cir. 2013).

[4] The ALJ discussed the history of Plaintiff's back disorder, beginning with a work injury on February 3, 1999. (Tr. 24). On August 20, 1999, Plaintiff underwent a 3 level laminectomy at L3, L4, L5 (Tr. 317-28) and on June 7, 2005 a left-sided laminectomy over the L3, L4, L5 and S1 segments. (Tr. 329-54). Plaintiff had lumbar nerve root blocks in April and May 2007. (Tr. 370-77). On August 9, 2007, Plaintiff reported that he was "fairly stable" and could return to work as a truck driver. (Tr. 379). Kipp W. Kennedy, M.D., Plaintiff's spinal surgeon,

evidence from Ocala Family Physicians and the Heart of Florida Health Clinic. Treatment records from Plaintiff's primary care physician, Donald Liebelt, M.D. at Ocala Family Physicians from July 2008 through July 2009, consistently reflect that Plaintiff reported he was "negative for arthralgias, back pain, and myalgias." (Tr. 422, 427, 431, 434). On examination, Dr. Liebelt noted that Plaintiff had a normal gait, tone and muscle strength; full painless range of motion of all major muscle groups and joints; no laxity or subluxation of any joints; and no misalignments, crepitus or tenderness in major joints. (Tr. 424, 429, 432). Over the course of his treatment, Dr. Liebelt never made any findings about Plaintiff's back pain. (Tr. 431-34, 585-88). Likewise, during treatment at the Heart of Florida Health Clinic during June and July 2011, Plaintiff never requested treatment for low back pain. (Tr. 562-78). At his initial evaluation in June 2011, Plaintiff sought treatment for hypertension, high cholesterol, diabetes and hypothyroidism. (Tr. 567). On examination, he was found to have normal strength, tone, and muscle bulk in all four extremities, with no abnormal movements. (Tr. 569). Plaintiff's gait was normal and he could stand without difficulty. (Tr. 569). He had no spinal tenderness; no subluxations; normal range of motion in his spine; and his paracervical and neck muscle strength were within normal limits. (Tr. 569). On July 12, 2011, Plaintiff reported that his chronic low back pain was "a little worse recently" but declined treatment. (Tr. 562).

Contrary to Plaintiff's contention, the ALJ recognized that Plaintiff suffers from chronic back pain. (Tr. 25). However, the ALJ properly concluded that "the evidence is insufficient to support limitations that rise to the level of disability." (Tr. 25). It is well-established that it is the functional limitations from an impairment, and not the mere diagnosis of an impairment that are

---

authorized Plaintiff to return to work and did not identify or proscribe any functional limitations or restrictions. (Tr. 379).

determinative in evaluating disability. *Britt ex rel. Holder v. Colvin*, No. 8:12-cv-1638-T-TGW, 2014 WL 106584, at *5 (M.D. Fla. Jan. 8, 2014).

As for diabetes mellitus, the record shows that on March 26, 2009, Plaintiff had an ulcer on his left foot that developed from a callus and resulted in an infected lesion. (Tr. 403, 405, 411-18). On March 30, 2009, Plaintiff underwent incision and drainage and amputation of two toes on his left foot. On April 16, 2009, Plaintiff was discharged from the hospital. (Tr. 521). By September 2009, it was noted that the amputation was well healed. (Tr. 451, 452). The ALJ noted that the medical records show three additional periods of ulcers, none of which lasted longer than two months. (Tr. 26; 445-51, 496-502, 510-19). Plaintiff was repeatedly advised to obtain and wear proper footwear to off-load his weight so that the lesions could heal. (Tr. 445-51, 496, 498, 500, 502). On October 26, 2009, Plaintiff's podiatrist at the Foot & Ankle Center of Ocala, Scott P. Goldstein, DPM, noted that he advised Plaintiff many times that Plaintiff was "walking too much and without the proper shoe gear" and that as a result of such behavior his skin "will continue to break down in those areas." (Tr. 448). In a letter dated June 6, 2011, Dr. Goldstein explained that Plaintiff's wounds have completely healed numerous times and that he likely developed the callous and the reopening of the ulcer due to the friction of weight bearing. He noted that Plaintiff was prescribed custom-molded diabetic shoes to offload the pressure from the plantar aspect of the foot and that Plaintiff stated he had been wearing them. (Tr. 561). Dr. Goldstein never opined that Plaintiff was disabled or unable to work, nor did he identify any functional limitations. Other than the ulcers, the medical records reflect very few other complications related to Plaintiff's diabetes mellitus, nor does Plaintiff identify any in his memorandum. After considering the relevant evidence, the ALJ concluded – and her conclusion is supported by substantial evidence – that medications have been relatively effective in controlling Plaintiff's symptoms and when

complications occur they were short-lived and directly related to noncompliance with his medication regimen and recommendations to obtain custom diabetic shoes. (Tr. 27). *See* e.g., 20 C.F.R. §404.1529(c)(3)(iv)-(v); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984)(noting that successful treatment with medication undermines allegations of disabling limitations).

The ALJ correctly found that Plaintiff's allegations of totally disabling symptoms, were undermined by the absence of any restrictions placed on Plaintiff by treating doctors. (Tr. 30). Likewise, the findings of the consultative examiners support the ALJ's conclusion that Plaintiff's allegations of disabling limitations were not fully credible. On December 16, 2009, Dantuluri, Raju, M.D. performed a consultative examination. (Tr. 470-71). While Dr. Raju noted that Plaintiff had an abnormal stiff gait with a slight limp, he also noted that Plaintiff came to the office without an assistive device and had no difficulty getting on and off the examination table. (Tr. 470). On June 14, 2010, Samer Choksi, M.D., performed a consultative examination and did not report any significant findings as to Plaintiff's back, legs, feet, or diabetes. (Tr. 476-79). While he noted that Plaintiff had a shuffling gait, he reported that Plaintiff was able to walk without an assistive device, was able to squat and could heel-to-toe walk. (Tr. 479). His diagnostic impression was diabetes mellitus, stable; hypertension; low back pain status post-surgery x 2, consistent; and amputation of the left 4th and 5th toes with no noted disability. (Tr. 479).

In addition, despite his allegations of disabling pain, Plaintiff sought recertification as a commercial driver in May 2011. (Tr. 579-80). Although he was limited to interstate driving and was given restrictions of no lifting, pushing, or pulling over twenty pounds, Plaintiff still was recertified as a commercial driver. (Tr. 580). A claimant's activities properly may be considered in showing that Plaintiff's symptoms were not as limiting as alleged. *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

Accordingly, the undersigned concludes that the ALJ articulated numerous compelling reasons, well-supported by the record, for discrediting Plaintiff's subjective complaints.

## IV. RECOMMENDATION

In view of the foregoing, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE AND ENTERED** in Ocala, Florida, on June 6, 2014.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

All Counsel